IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE FIGUEROA, : | |
|    Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 21-CV-0041 |
| : | |
| KEVIN PISTRO, : | |
|    Defendant. : | |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                                                               **FEBRUARY 16, 2021**

      This matter comes before the Court by way of a Complaint (ECF No. 1), brought by *pro se* Plaintiff Jose Figueroa, a pretrial detainee incarcerated at the Federal Detention Center in Philadelphia ("the Philadelphia FDC"), based on allegations that he was infected with COVID-19 and delayed treatment as a result of the negligence of staff during his incarceration at FDC. Also before the Court is Figueroa's Motion to Proceed *In Forma Pauperis* (ECF No. 6) and his Prison Trust Fund Account Statement (ECF No. 5). For the following reasons, the Complaint will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Figueroa will be granted leave to file an amended complaint.

**I.    FACTUAL ALLEGATIONS**

      Figueroa, who has been held in the Philadelphia FDC since September 18, 2019 awaiting trial, avers that he tested positive for COVID-19 on October 30, 2020 because of the "negligence of the staff" at FDC. (ECF No. 1 at 2.)[1] Figueroa avers that he was infected with COVID-19 from October 30, 2020 through November 24, 2020. (*Id.*) While infected, Figueroa alleges that his blood sugar dropped on November 8, 2020, and he was not seen by a nurse until sometime on

---

[1] The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system.

1

November 12, 2020, after his blood sugar had already gone back up.  (*Id.*)  Figueroa further avers that although he was "clear" of COVID-19 by November 24, 2020, he was still "in danger" because he was kept in the same unit as ten other people who were infected with COVID-19.  (*Id.*)  Figueroa asserts that he was not given a second COVID-19 test after he "was clear" of the virus.  (*Id.* at 3.)

Figueroa avers that while he was infected with COVID-19, he was in lockdown and served peanut butter, jelly, and bread for each of his three meals every Friday through Sunday.  (*Id.*)  Figueroa avers that this subjected him to cruel and unusual punishment in violation of the Eight Amendment.  (*Id.*)

Figueroa's Complaint names only Kevin Pistro as a Defendant, identifying him as the Warden of FDC.  (*Id.* at 2.)  Figueroa seeks $10,000,000 in damages for pain and suffering stemming from his infection with COVID-19 "by the negligence[] of the staff" from the Philadelphia FDC.  (*Id.*)   Figueroa also avers that he is still "in danger."  (*Id.*)

## II.    STANDARD OF REVIEW

The Court grants Figueroa leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

---

[2] However, as Figueroa is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff," but disregard "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" in determining whether a plaintiff has stated a claim. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878 (3d Cir. 2018) (quotations omitted). As Figueroa is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.     DISCUSSION

Figueroa's claims are based on his allegations that he was infected with COVID-19 and was delayed treatment as a result of the negligence of staff during his incarceration at FDC. It appears that by citing to both theories in the heading of his Complaint (ECF No. 1 at 2), Figueroa intends to pursue these claims as either medical negligence claims under the Federal Tort Claims Act ("FTCA") or deliberate indifference claims pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Accordingly, the Court will liberally construe the Complaint as raising both FTCA and *Bivens* claims. Figueroa's claims are flawed, however, under either approach.

### A.     FTCA Claims

The FTCA waives the sovereign immunity of the United States for torts of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 (providing that, for tort claims, the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances"); *Sosa v. Alvarez-Machain*, 542

U.S. 692, 700 (2004) (stating that "[t]he FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Defendants liable in tort as a private individual would be under like circumstances.'" (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962))). The United States is the only proper defendant in an FTCA action. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008).

Under the FTCA "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). In other words, "[n]o claim can be brought under the FTCA unless the plaintiff first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim." *Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015); *see also Burrell v. Loungo*, 750 F. App'x 149, 154 (3d Cir. 2018) (stating that "[u]nder 28 U.S.C. § 2675(a), a plaintiff may not bring a claim under the FTCA unless he 'first presents the claim to the appropriate federal agency and the agency renders a final decision on the claim.'") (quoting *Shelton*, 775 F.3d at 569). This requirement is "jurisdictional and cannot be waived." *Shelton*, 775 F.3d at 569. Therefore, a plaintiff "must . . . plead administrative exhaustion in an FTCA case." *Colbert v. U.S. Postal Serv.*, 831 F. Supp. 2d 240, 243 (D.D.C. 2011).

To the extent Figueroa intended to raise medical negligence claims under the FTCA, his claims fail for various reasons. First, the United States is the only proper defendant in an FTCA case, but Figueroa has not named the United States as a Defendant. Moreover, it is not clear whether Figueroa exhausted administrative remedies prior to filing his Complaint as the

4

Complaint does not include allegations pertaining to administrative exhaustion.[3]  In sum, Figueroa has not named the proper defendant, and it is not apparent from the Complaint, as pled, that the Court has jurisdiction over his FTCA claims.  For those reasons, the Court will dismiss Figueroa's FTCA claims.

> **B.**     *Bivens* **Claims**

The federal actor analogue to § 1983 liability is *Bivens*, which provides a remedy for certain constitutional violations committed by federal actors.  *See, e.g.*, *Ynfante v. United States*, Civ. A. No. 13-767, 2015 WL 631055, at *5 (M.D. Pa. Feb. 12, 2015) ("In contrast to FTCA actions, a *Bivens* claim can only be asserted against individual officials.").  After *Bivens*, the Supreme Court recognized an implied cause of action where prison officials are deliberately indifferent to a prisoner's serious medical needs.  *See Carlson v. Green*, 446 U.S. 14 (1980).  Here, Figueroa seeks to invoke *Bivens* based on allegations that he was infected with COVID-19 and was subsequently delayed treatment when his blood sugar level dropped during his incarceration at the Philadelphia FDC.  To state a constitutional claim based on a delay or denial of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4]  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A

---

[3] Figueroa does not discuss whether he filed an administrative remedy in accordance with applicable procedures.  *See Abdullah v. Miller*, 673 F. App'x 135, 138 (3d Cir. 2016) (per curiam) (explaining that litigant's "failure to follow the administrative remedy requirements of the BOP amounts to a procedural default of his federal claim").

[4] The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, while the Due Process Clause of the Fifth Amendment governs claims brought by pretrial detainees in federal custody.  *See Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018); *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  However, the standard under these amendments for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis.  *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam).

prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236.

Finally, a *Bivens* cause of action based on a theory of deliberate indifference to a prisoner's proper medical care cannot generally lie against persons who had no direct involvement in that medical treatment. *Accord Balter v. United States*, 172 F. App'x 401, 403 (3d Cir. 2006). Rather, a plaintiff must allege plausibly that each official he has named violated his constitutional rights "through the official's own individual actions." *Iqbal*, 556 U.S. at 676.

Thus, to be plausible, a *Bivens*-based deliberate indifference claim must allege that a Defendant personally refused, delayed or prevented Figueroa from receiving medical care. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (finding that the district court properly dismissed prison officials who were sued "based on their failure to take corrective action when grievances or investigations were referred to them"); *Jackson v. Grondolsky*, Civ. A. No. 09-5617, 2011 WL 13704 at *1 n. 1 (D.N.J. Jan.3, 2011) (surveying applicable Third Circuit precedent regarding supervisory liability in the prisoner medical treatment context and holding that no cause of action against a prison warden would lie where the only allegation supporting the claim was that the warden failed to take action after being presented with plaintiff's administrative grievances); *Garvey v. Martinez*, Civ. A. No. 08-2217, 2010 WL 569852 at *7 (M.D. Pa. Feb.11, 2010) (rejecting prisoner's *Bivens* deliberate indifference claim against defendant prison warden where the warden was not personally involved in decisions regarding plaintiff's medical care and became aware of plaintiff's situation solely through the administrative grievance process) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).

Here, Figueroa does not allege any facts describing how the only named Defendant, Warden Pistro, was personally involved in matters related to his medical care. In fact, other than being identified as the Warden at the Philadelphia FDC, there is no other mention of Pistro in Figueroa's Complaint. Accordingly, Figueroa has not alleged a plausible basis for inferring that Pistro was aware of his serious medical needs and responded to those needs with deliberate indifference. This is especially true for someone such as Warden Pistro, a nonmedical employee who is generally entitled to defer to the medical professionals caring for Figueroa. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to

respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."); *see also Bearam v. Wigen*, 542 F. App'x 91, 92 (3d Cir. 2013) (per curiam) ("[A]s nonmedical personnel, Wigen is entitled to presume the competence of medical staff in treating a prisoner, meaning that his conduct cannot, without much more, amount to 'deliberate indifference.'").  In sum, Figueroa has not stated a *Bivens* claim.  Furthermore, he has not alleged facts establishing personal involvement of Pistro that would state a plausible claim against him.

### C.     Eighth Amendment Claims

Figueroa avers that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when he was served peanut butter, jelly, and bread for each of his three meals every Friday through Sunday during his time on lockdown.  (ECF No. 1 at 3.)  While there is a federal actor analogue to § 1983 liability under *Bivens*, the availability of *Bivens* as a cause of action is limited, and no prior decision appears to have sanctioned a claim under *Bivens* similar to the one Figueroa seeks to bring.  "[T]he Supreme Court has plainly counseled against creating new *Bivens* causes of action."  *Vanderklok v. United States*, 868 F.3d 189, 199 n.8 (3d Cir. 2017) (citing *Minneci v. Pollard*, 565 U.S. 118 (2012) (refusing to extend Eighth Amendment *Bivens* action to individuals working at a private prison); *FDIC v. Meyer*, 510 U.S. 471 (1994) (refusing to extend *Bivens* claim to federal agency defendant); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (refusing to extend *Bivens* to case involving wrongful denials of disability benefits); *United States v. Stanley*, 483 U.S. 669 (1987) (refusing to extend *Bivens* to case involving injuries suffered incident to military service); *Chappell v. Wallace*, 462 U.S. 296 (1983) (refusing to extend *Bivens* to case involving racial discrimination by superiors in military); *Dancy v. Watson*, Civ. A. No. 19-426, 2020 WL 1139422, at *1 (S.D. Ind. Mar. 9,

2020) (refusing to extend *Bivens* to case involving food-borne illness caused by contaminated food as a result of rodent infestation); *Lovett v. Ruda*, Civil A. No. 17-2010, 2018 WL 4659111, at *8 (D. Colo. Sept. 28, 2018) (refusing to extend *Bivens* to case involving a failure to accommodate dietary restrictions)); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 742-43 (2020) (stating that the "expansion of *Bivens* is a disfavored judicial activity," that "it is doubtful" that the outcome of *Bivens* would be the same if it were decided today, and that "for almost 40 years, [the Supreme Court] ha[s] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 472-73 (internal quotations marks and citations omitted)). In light of the foregoing cases, establishing a new *Bivens* context for Figueroa's claim would be inappropriate.

Even assuming for our purposes that Figueora would be entitled to pursue this claim under *Bivens*, it does not amount to punishment as contemplated by the Eighth Amendment. A federal pretrial detainee challenging the conditions of his confinement in a *Bivens* claim must turn to the Fifth Amendment Due Process Clause for protection. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16, 99 S. Ct. 1861 (1979); *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012); *Fuentes v. Wagner*, 206 F.3d 335, 431-43 (3d Cir. 2000). Under *Bell*, to establish a basis for a violation, a prisoner must allege that his conditions of confinement amount to punishment. *Id*. 441 U.S. at 538. Under the analogous standard applicable to prisoners under the Eighth Amendment, conditions of confinement must deny a detainee "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). A prisoner

must also establish that the defendants acted with deliberate indifference.  *Farmer*, 511 U.S. at 835.

Figueroa's allegations about being served peanut butter, jelly, and bread during lockdown (a limited period from October 30, 2020 through November 24, 2020) do not set forth a plausible claim under the Eighth Amendment.  A constitutionally adequate diet "must provide adequate nutrition, but corrections officials may not be held liable unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)."  *Duran v. Merline*, 923 F. Supp. 2d 702, 719-20 (D.N.J. 2013) (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) and *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation."  *Id.* at 720 (citing *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)).  "Under the Eighth Amendment, which provides a floor for the rights of pretrial detainees, *see Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), inmates must be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger' to their health and well-being."  *Duran*, 923 F. Supp. 2d at 720 (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramons v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)); *Mora v. Camden Cty.*, Civ. A. No. 09-4183, 2010 WL 2560680, at *8 (D.N.J. June 21, 2010)).

The sparse allegations in the Complaint do not satisfy the objective requirement.  *See Duran*, 923 F. Supp.2d at 720 ("Being served cold meals for a 45–day period . . . is not 'punishment' under *Bell*.  So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . ."); *see also Parker v. Luryd*,

Civ. A. No. 16-979, 2016 WL 7007480, at *2 (D. Del. Nov. 28, 2016) ("The issue of serving cold food has been considered and rejected by other courts. The provision of cold food is not, by itself, a violation of the Eighth Amendment as long as the food is nutritionally adequate and is 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'").

Figueroa does not allege that the food he was served was nutritionally inadequate, nor does he allege that it was unsafe to consume. Instead, Figueroa claims that his constitutional rights were violated under the Eighth Amendment because he was served unvaried, cold meals. This does not amount to a constitutional violation.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Figueroa leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Figueroa's Eighth Amendment food claim will be dismissed with prejudice. Figueroa's remaining claims of negligence under the FTCA and deliberate indifference to serious medical needs pursuant to *Bivens* will be dismissed without prejudice because they are not plausible as alleged. The Court cannot, however, state that Figueroa could never allege plausible claims against the United States under the FTCA or against an appropriate defendant pursuant to *Bivens*. Accordingly, Figueroa will be permitted to file an amended complaint within thirty (30) days in the event he can state a plausible claim. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

An appropriate Order follows.

>BY THE COURT:
>
>/s/ Chad F. Kenney
>
>_____
>**CHAD F. KENNEY, J.**